# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 29, 2001 Session

## LINDA F. GREENE v. DR. WOODY STINSON, D.D.S.

**Appeal from the Circuit Court for Jefferson County**
**No. 16,369-I      William M. Dender, Judge**

**FILED DECEMBER 3, 2001**

**No. E2001-00628-COA-R3-CV**

---

Houston M. Goddard, P.J., Dissenting

I respectfully dissent from the majority opinion, believing that there is sufficient evidence, when viewed under the standard we apply as to summary judgments, to find that--taking the strongest legitimate view of the plaintiff's proof and indulging all favorable reasonable inferences to be drawn therefrom--there is material evidence to show that Dr. Stinson knew or should have known that  Ms. Greene swallowed the impression substance.

I say this because Ms. Greene testified she told Dr. Stinson that she had swallowed the substance.  Having said this, I recognize she volunteered that she did not know whether he heard her or not, but, of course, she could not know what he heard.  He did testify that she tried to tell him something but he could not understand because of the tray which was in her mouth.[1]

Additionally, the proof shows that Ms. Green was weeping when the doctor came back into the room, as shown by the following testimony in her discovery deposition:

---

[1]      Q.  Okay.  At any time from the time that you mixed the compound and put the tray in Ms. Greene's mouth was there any indication of any difficulty, any gagging or coughing or anything of that nature?

A.  Yeah, she did some gagging at the very beginning when I placed the tray.

Q.  At the beginning.  Okay.  Did she say anything?

A.  It's very difficult to talk with that tray in your mouth.  No.

Q.  Did you get the impression she was trying to say anything?

A.  I got the impression she was trying to explain to me that she was gagging, yes.

Q. All right. Let's move to November 13, '97. That was the last date that you saw Dr. Stinson. Take me through in as much detail as you can remember everything that occurred on that particular visit, just take it from the time you walked in the door.

A. My appointment was at 1:30. I walked in around 1:15 and I'd say it was about between 30 and 40 minutes and they called me back. He went ahead and numbed me. And I don't know what all went on. He was running from room to room with all these other patients in between me. And I know he started grinding on my teeth and I don't know how long that took. And he left again, came back in, numbed me again, left again. Or done something. He stuck a needle in my teeth. I guess that's what he was doing. And I believe he started grinding on my teeth again.

Then he done the impression and that's when that stuff went down my throat. See, he evidently over-filled the tray. It didn't have nowhere else to go. I was crying. The nurse was holding – or his helper was holding it in my mouth while he went to another office with another patient. And he came back in. I was gagging real loud and she said "Don't move or we'll have to do it over." There wasn't nowhere else for it to go.

I told him when he came back in, I said – because I was crying. I said "A big bunch of that stuff went down my throat." And I don't know if he heard me or what, but he didn't say anything. I thought, well, maybe it won't kill me to myself. And I left his office at 7:30 that night with that stuff in my stomach.

In light of the fact that she had gagged and was crying, even if the doctor had not heard what she said (he testified that she said something which he could not understand), I conclude that it was incumbent upon him to make inquiry as to the cause of her distress.

I accordingly would vacate the summary judgment and remand the case for trial.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE